# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JANE DOE                                              CIVIL ACTION

VERSUS
                                                     NO. 20-CV-514-JWD-EWD

THE CITY OF BATON
ROUGE, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 5, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JANE DOE**                                           **CIVIL ACTION**

**VERSUS**

                                                        **NO. 20-CV-514-JWD-EWD**

**THE CITY OF BATON ROUGE, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Before the Court is the Amended Complaint,[1] filed by Jane Doe[2] ("Plaintiff"). Plaintiff's Motion to Change Venue Due to Prejudice, Motion for 28 U.S. Code § 144 Disqualification of the entire U.S. Court for the Middle District of Louisiana, and Motion to Disqualify Judge Pursuant to 28 U.S. Code § 455 be denied as she has failed to establish entitlement to such relief.[3] Following a hearing held pursuant to *Spears v. McCotter*,[4] it is recommended that all federal claims be dismissed with prejudice as the claims are either factually and/or legally frivolous, and that Plaintiff be denied leave to amend as she has already filed one amended complaint and future attempts would not cure the defects. Supplemental jurisdiction over state law claims should be declined. Plaintiff's Motion to Withdraw her previously granted Motion to Proceed In Forma Pauperis[5] and her Motion To Accept And Properly Process Filing Fee[6] will be denied without prejudice to reurging if the district judge rejects the recommendation that Plaintiff's claims be dismissed.

---

[1] R. Doc. 11.

[2] Plaintiff's Complaint and Amended Complaint seek leave to proceed "pseudonymously." R. Docs. 1 and 11. However, Plaintiff signed her legal name to her original Complaint, and therefore, revealed her own identity in the record. R. Doc. 1, p. 95.

[3] R. Docs. 16-18.

[4] 766 F.2d 179 (5th Cir. 1985).

[5] R. Doc. 20 *and see* R. Doc. 5.

[6] R. Doc. 21.

## I.    Background

On August 6, 2020, Plaintiff, who is representing herself, filed her original Complaint, alleging violations of her federal civil rights and state law torts, purportedly giving rise to federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. 1367.[7]

That same day, Plaintiff filed an Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form) (the "IFP Motion").[8]  The IFP Motion was granted and a hearing was set pursuant to *Spears v. McCotter*[9] ("*Spears* hearing") to determine if any or all of Plaintiff's claims were frivolous and subject to dismissal.[10]  Just prior to the scheduled *Spears* hearing, Plaintiff filed a 105-page Amended Complaint, that essentially reiterated the same claims asserted in the original Complaint, but which dismissed a few defendants, added claims under the First and Fourteenth Amendments to the U.S. Constitution, and added additional facts in support of some of the prior claims.[11]  Dissatisfied with the setting of the *Spears* hearing, Plaintiff sought a writ of mandamus to prevent the hearing, which writ was denied by the U.S. Court of Appeals for the Fifth Circuit.[12]  Plaintiff then filed three additional motions seeking a change of venue and disqualification of the judges assigned to this matter, as well as the entire panel of this Court, to-wit: a Motion to Change Venue Due to Prejudice; a Motion for 28 U.S. Code § 144 Disqualification

---

[7] R. Doc. 1, ¶ 1.  The Amended Complaint does not invoke the Court's diversity jurisdiction pursuant to 42 U.S.C. § 1332, and furthermore, as discussed with Plaintiff during the *Spears* hearing, the Amended Complaint does not adequately allege the citizenship of any party or sufficiently alleged the amount in controversy to establish diversity jurisdiction.  *See* R. Doc. 11, ¶ 4 (merely alleging Plaintiff's residency), ¶¶ 5-40, (naming each Defendant but not alleging their citizenships), and p. 104, prayer for damages (generally praying for "compensatory, general, and punitive damages as well as for attorney's fees, expert fees…," which provides no indication of whether the jurisdictional threshold is met).  Plaintiff alluded to diversity jurisdiction during the *Spears* hearing, but it is not clear that it exists based on Plaintiff's statements during the hearing, as Plaintiff repeatedly referred to her "residency" in Oregon, which began in July 2020 about a month before the original Complaint was filed.  It is unclear whether Plaintiff's domicile is in Oregon.
[8] R. Doc. 2.
[9] 766 F.2d 179 (5th Cir. 1985).
[10] R. Docs. 5, 7.
[11] R. Doc. 11.
[12] R. Docs. 9 and 14; No. 20-30557 (5th Cir. Oct. 23, 2020).

of the Entire US Court for the Middle District of Louisiana; and a Motion to Disqualify Judge Pursuant to 28 U.S. Code § 455.[13]

At the *Spears* hearing, which was rescheduled twice due to the pendency of the mandamus proceedings, Plaintiff presented argument regarding the basis for her claims and particularly, their timeliness. The undersigned explained to Plaintiff that her Motions for Recusal and/or Disqualification of the judges assigned to this case and of the entire court, as well as the Motion to Change Venue, all of which are based on Plaintiff's generalized, subjective belief of prejudice, failed to articulate any details sufficient to support her allegations of bias or impartiality by any of the judges of this Court in order to satisfy the requirements of 28 U.S. § 144 and 28 U.S. § 255, or to warrant a change of venue.  As to the merits of the Amended Complaint, the undersigned explained that any potentially viable claims appeared to be prescribed and any timely claims fail to state a basis for relief. At the conclusion of the hearing, Plaintiff was advised that a report would be issued with a recommendation as to whether Plaintiff's claims should be allowed to proceed,[14] and the objection process was explained. Less than three weeks after the *Spears* hearing, Plaintiff filed the Motion to Withdraw her IFP Motion.[15]  On December 30, 2020, Plaintiff filed the Motion to Accept and Properly Process Filing Fee.[16]

## II.   Law and Analysis

### A.  Plaintiff's Motions to Change Venue and For Recusal Lack Merit Will Be Denied

#### 1.  Motion to Change of Venue

Plaintiff's Motion to Change Venue seeks a transfer to a geographically distant court because of Plaintiff's belief of bias against her in this district.  As set forth in her supporting

---

[13] R. Docs. 16-18.
[14] R. Doc. 19.
[15] R. Doc. 20.
[16] R. Doc. 21.

Affidavit, Plaintiff contends that this Court is engaged in the vast conspiracy that is the subject of her Amended Complaint (described in detail, *below*). According to the Motion to Change Venue, Plaintiff has a preconceived opinion about this case based on the initial dismissal with prejudice of the previous case she filed in this district in 2019 (alleging many of the same claims against many of the same defendants),[17] and because of the setting of the *Spears* hearing.[18]

Section 1983 does not contain a specific venue provision. Venue is, therefore, determined under the general venue provision in 28 U.S.C. § 1391(b).[19] Pursuant to 28 U.S.C. § 1391(b),[20] '[v]enue for a Section 1983 action lies in the judicial district where a defendant resides, or in the judicial district where a substantial part of the events or omissions giving rise to the claims occurred.'[21] As Plaintiff acknowledges in her Amended Complaint, this judicial district is where all of the defendants reside and is the district where a substantial part of the events or omissions giving rise to the claims occurred.[22]

However, 28 U.S.C. § 1404 provides: "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. (b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the

---

[17] *Doe v. City of Baton Rouge, et al.*, No. 19-48 (M.D. La.).

[18] R. Doc. 16 and R. Doc. 16-1.

[19] *Baker v. State of Texas*, No. 16-008, 2016 WL 625090, at *1 (S.D. Tex. Jan. 13, 2016), *report and recommendation adopted*, No.16-008, 2016 WL 631427 (S.D. Tex. Feb. 16, 2016), *citing Williams v. Hoyt*, 556 F.2d 1336, 1341 (5th Cir. 1977) (*citing* 28 U.S.C. § 1391(b) as the venue provision applicable to § 1983 actions); *Trujillo v. Dr. Arce*, No.03–114, 2003 WL 21266974, at *1 (N.D. Tex. May 27, 2003) (same).

[20] 28 U.S.C. § 1391(b) provides: "Venue in general.--A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

[21] *Trujillo*, 2003 WL 21266974, at *1.

[22] R. Doc. 11, ¶ 2.

4

division in which pending to any other division in the same district…..."  There can be no question but that the district courts have "broad discretion in deciding whether to order a transfer."[23]

Plaintiff does not seek a transfer to another division within this district, she seeks a transfer to an entirely new district; therefore, the applicable provision is §1404(a).  As all parties have not consented to transfer, the pertinent question under § 1404(a) is whether this case "might have been brought" in the destination venue.[24]  The Fifth Circuit has held: "As to the appropriate standard, in *Humble Oil* we noted that "the avoidance of dismissal through § 1404(a) lessens the weight to be given" to the plaintiff's choice of venue and that, consequently, "he who seeks the transfer must show good cause." When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." When the transferee venue is not clearly more convenient than the venue originally chosen, the original choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer."[25]

Plaintiff's Motion to Change Venue is unique in that it is Plaintiff who seeks to change her chosen venue; however, Plaintiff has not suggested a specific destination venue, and therefore, analysis of the factors typically considered in transfer decisions is  not possible.[26]  Even if Plaintiff

---

[23] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008), *citing Balawajder v. Scott,* 160 F.3d 1066, 1067 (5th Cir. 1998) (*quoting Caldwell v. Palmetto State Sav. Bank,* 811 F.2d 916, 919 (5th Cir. 1987).
[24] 545 F.3d at 312.
[25] *In re Volkswagen*, 545 F.3d at 315, *citing Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.,* 321 F.2d 53, 56 (5th Cir. 1963).
[26] *See Haughton v. Plan Adm'r of Xerox Corp. Ret. Income Guarantee Plan,* 2 F. Supp. 3d 928, 936 (W.D. La. 2014) (noting that venue transfers involve consideration of "a number of 'not necessarily exhaustive or exclusive' private and public interest factors. *Volkswagen II,* 545 F.3d at 315. The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citations omitted). The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the

had suggested a destination venue, however, it is unlikely that a different venue would be a more convenient forum.  As Plaintiff has acknowledged, all of the allegations relate to incidents that happened in this district by Defendants who are located in this district.  Furthermore, Plaintiff has also not shown good cause to transfer venue on her asserted grounds of judicial bias and prejudice because she has not established that such bias or prejudice exists, as further analyzed below.

        **2.**  **Recusal of the Entire Court and the Judges Assigned**

A few days after filing the Motion to Change Venue, Plaintiff filed her Motion for 28 U.S. § 144 Disqualification of the entire U.S. Court for the Middle District of Louisiana.[27]  The Motion for Disqualification clarifies that the Motion to Change Venue should be construed as a "threefold motion," wherein Plaintiff seeks: "1) for the entire district court/judicial district to disqualify itself as provided by 28 U.S. Code § 455, or 2) proceed no further therein based on the Plaintiff's affidavit of bias and prejudice [filed in support of the Motion to Change Venue], as provided by 28 U.S. Code § 144 and, lastly, 3) transfer this action to a geographically distant district court."[28]

A few days after the first Motion for Disqualification, Plaintiff filed a related Motion for 28 U.S. Code § 455 Disqualification of the judges assigned to this case based on the same grounds of prejudice, *i.e.*, that her prior action was dismissed with prejudice and her request to proceed i*n forma pauperis* during the appeal of that dismissal with prejudice was not ruled on in a more timely fashion.[29]  As explained to Plaintiff during the *Spears* hearing, she has not established grounds for recusal of the entire court or of the judges assigned to this case.

---

forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.' *Id.*").
[27] R. Doc. 17.
[28] R. Doc. 17, p. 1.
[29] R. Doc. 18.

Two statutes govern recusal motions: 28 U.S.C. § 144 and 28 U.S.C. § 455.[30]  Section 144 states as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Some courts have held that a *pro se* litigant may not obtain disqualification of a presiding judge under § 144 because a *pro se* litigant cannot meet the plain language of the statute requiring "a certificate of counsel of record stating that it [the affidavit in support of recusal] is made in good faith."[31]  Even if Plaintiff could seek recusal under § 144, she has failed to allege any facts to support her belief that there is any bias or prejudice against her.  As to the judges currently assigned, the district judge has not issued any rulings in this case, nor would any such rulings support recusal.[32]  Similarly, as explained to Plaintiff during the *Spears* hearing, there was no prejudice to Plaintiff by the undersigned in the setting of the *Spears* hearing, which the Court is allowed to conduct in light of Plaintiff's *in forma pauperis* status and Plaintiff's challenge to which was rejected by the Fifth Circuit.[33]  Likewise, Plaintiff has not shown bias or prejudice against her by the judges assigned to her prior action because the initial order of dismissal of that action was

---

[30] *K & F Holdings, Ltd. v. Rouse's Enterprises, L.L.C.*, No. 16-293, 2017 WL 2778345, at *1 (M.D. La. June 27, 2017).

[31] *See e.g., Gibson v. Gusman,* No. 14-2273, 2014 WL 6469507, at **2-3 (E.D. La. Nov. 17, 2014), *citing Robinson v. Gregory*, 929 F.Supp. 334, 337-38 (S.D. Ind. 1996) (holding that "[a]lthough a pro se litigant ordinarily may take the same action on his or her own behalf that an attorney could, that approach should not apply to the requirements of Section 144.").

[32] *See United States v. Landerman*, 109 F.3d 1053, 1066 (5th Cir. 1997) (citing *Liteky v. United States*, 510 U.S. 540, 555) (1994)) ("Judicial rulings along almost never constitute valid basis for a bias or partiality motion.").

[33] R. Doc. 14.

subsequently amended to be without prejudice, per Plaintiff's request;[34] her *in forma pauperis* motion was ruled upon in due course and not in an untimely fashion;[35] and regardless, the perceived timeliness of a ruling could not be the basis of a successful recusal motion.[36]  As Plaintiff has not established the basis for disqualification under 28 U.S.C. §144, her motion should be denied.

> Section 455 provides, in pertinent part:
>
>> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ."

In determining whether recusal is appropriate under § 455, the Fifth Circuit has stated that the standard is an objective one.  Plaintiff must demonstrate that a reasonable and objective person, knowing all the facts and circumstances of the case, would harbor doubts concerning the judge's impartiality.[37]  This showing must be based on specific facts so as to avoid giving a party a "random veto over the assignment of judges."[38]  Also, a § 455 claim must not be so broadly construed that "recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice."[39]

> Plaintiff alleges the same grounds in support of § 455 recusal and they fail for the same reasons.   Plaintiff has not provided any other specific facts that would lead a reasonable and

---

[34] *Doe v. City of Baton Rouge, et al.*, Case No. 19-48 (M.D. La.) at R. Docs. 6, 7 and 15 of that docket. Plaintiff appealed the initial dismissal with prejudice to the U.S. Court of Appeals for the Fifth Circuit, but the order of dismissal was amended to be without prejudice prior to the Fifth Circuit's ruling granting Plaintiff's appeal to convert the dismissal to one without prejudice.

[35] The motion to appeal *in forma pauperis* about which Plaintiff complains was filed on April 30, 2019, referred to the assigned magistrate judge on May 29, 2019 and granted on June 6, 2019.  *See*, *Doe v. City of Baton Rouge, et al.*, Case No. 19-48 (M.D. La.) at R. Docs. 8-11 of that docket.

[36] *See Landerman*, 109 F.3d at 1066.  If the ruling itself could almost never constitute a basis for a recusal motion, certainly the length of time a motion was pending should not.

[37] *Patterson*, 335 F.3d at 484; *U.S. v. Spears*, No. 09-19, 2012 WL 112985, at *2 (M.D. La. Jan. 12, 2012).

[38] *Capizzo v. State of Louisiana*, No. 99-138, 1999 WL 539439, at *1 (E.D. La. July 22, 1999).

[39] *Spears*, 2012 WL 112985 at *2.

objective person to question the impartiality of either judge assigned to this case or that of any of the judges in this judicial district. Accordingly, Plaintiff's Motion to Change Venue and Motions for Disqualification pursuant to 28 U.S. § 144 and § 455 will be denied.

### B. Timeline of Events Relevant to Plaintiff's Claims

Plaintiff's Amended Complaint names approximately forty-four defendants, consisting of private Louisiana citizens, divisions of Louisiana state government and their representatives, and divisions of East Baton Rouge Parish municipal government and their representatives,[40] including: primary tortfeasor Kyle Poulicek ("Poulicek"), an agent with the Medicaid Fraud Department of the Louisiana Department of Justice and several of his co-workers and/or superiors, including Jeff Landry, the Attorney General ("the DOJ Defendants");[41] several law enforcement officers of the Baton Rouge Police Department ("the EBRPD Defendants");[42] Lisa Freeman, Kimbra Brooks, and Deelee Morris, alleged legal advisers to the EBRPD Defendants ("the EBRPD Legal Advisers");[43] the Capital Area Family Violence Intervention Center, Inc. and its employee Ebony Cavalier ("the Capital Area Defendants"); Katie Craft, an FBI agent; the East Baton Rouge Parish District Attorney's Office, D.A. Hillar Moore, and Assistant D.A. Melanie Fields ("the D.A. Defendants"); the City and Parish of East Baton Rouge; local news reporter Christopher Nakamoto; several local attorneys solicited by Plaintiff for representation;[44] a couple of attorneys who represented Poulicek;[45] Judge Lisa Woodruff-White and Judge William Morvant of the Nineteenth Judicial District Court, State of Louisiana; two local otolaryngologists, *i.e.*, physicians

---

[40] All Defendants appear to be Louisiana citizens; however, even if Plaintiff could establish diversity of citizenship, it is not clear that the requisite jurisdictional threshold is met, and all of Plaintiff's claims have prescribed or otherwise fail for the reasons set forth herein.
[41] Specifically named are Patrick Magee and Ronald Beaver. R. Doc. 11, ¶ 14.
[42] Specifically named are the Baton Rouge Police Department, James Weber, Charles Dotson, Stephen Murphy, Robert Hunt, Shanard Carey, John Windham, Shona Stokes and Murphy Paul, Jr. R. Doc. 11, ¶¶ 5-6.
[43] R. Doc. 11, ¶ 10.
[44] Caitlynn Chugg, James Knipe, and Brad Cranmer. R. Doc. 11, ¶ 8, 18.
[45] Todd Tyson and Brendan Craig. R. Doc. 11, ¶ 9.

who specialize in treating the ear, nose, and throat, Dr. Dawn Sharp and Dr. Laura Hetzler,[46] and associated hospitals ("the Ear Doctor Defendants");[47] and several eye doctors and their assistants, including Dr. Shalimar Small, Dr. Ashton Holloway, Dr. Daniel Nelson, Dr. Blake Booth, and Dr. Blake Williamson ("the Eye Doctor Defendants").[48] [49]

Plaintiff alleges that Defendants were engaged in a vast conspiracy among various levels of state and municipal government and the private sector over approximately a three-year period beginning in 2017 solely designed to cover-up the actions of Poulicek (the "Conspiracy"). However, substantially all of Plaintiff's claims, which were filed on **August 6, 2020**, are untimely and should be dismissed.

The following facts in the Amended Complaint are taken as true for purposes of this analysis. According to Plaintiff, the Conspiracy arose as the result of Plaintiff's months-long past personal relationship with Poulicek, whom Plaintiff contends broke the cartilage in her ears on several occasions and also injured her dog after Plaintiff became pregnant.[50] Plaintiff contends that she did not realize at first that Poulicek was breaking her ear cartilage "as it is completely void of nerves and blood vessels, and accompanied by pregnancy-related analgesia, was not painful at first."[51] Plaintiff visited the Ear Doctor Defendants regarding the broken ear cartilage in 2017 and 2018.[52] Plaintiff contends that, despite that these doctors acknowledged the ear injuries to Plaintiff, they either failed to provide accurate information to the EBRPD Defendants during the

---

[46] R. Doc. 11, ¶¶ 20, 29.
[47] Franciscan Missionaries of Our Lady of the Lake Health System and Our Lady of the Lake Physicians Group, R. Doc. 11, ¶ 37.
[48] R. Doc. 11, ¶¶ 22-26.
[49] R. Doc. 11, ¶¶ 5-40. Plaintiff avers that all Defendants, including the governmental actors, are sued in their individual capacities. *Id.* at ¶ 41. Plaintiff has also named unidentified Defendants, *i.e.*, "Con Poe 1 and 2," as well as "unsued conspirators," *e.g.*, the Baton Rouge Advocate, the Louisiana Attorney Disciplinary Board, Governor Edwards, Jill Craft, Tom Aswell, Ann Halphen, Joshua Palminiter, *etc.* R. Doc. 11, ¶¶ 16, 21, 27, 30, 33-36, 38-40.
[50] R. Doc. 11, ¶¶ 43, 50 (stating that Weber noted the relationship was only for 2 months), 52-53, 220.
[51] R. Doc. 11, ¶ 52. Plaintiff told Weber that she believed Poulicek wanted to kill her when they went for a hike in the woods once. *Id.* at ¶ 53.
[52] R. Doc. 11, ¶¶ 20, 29, 213-215.

investigation (see below), or the EBRPD Defendants falsified their opinions in the resulting report, as part of the Conspiracy.[53]  Furthermore, in November 2018, after Plaintiff requested that Dr. Hetzler confirm statements audio-taped by Plaintiff during a visit, the Franciscan Missionaries of Our Lady Health System and Our Lady of the Lake Physician Group dismissed Plaintiff as a patient, also as part of the Conspiracy.[54]

Plaintiff reported Poulicek's actions to the EBRPD Defendants in August 2017, who investigated the complaints primarily through James Weber ("Weber"), a detective in the EBRPD violent crimes unit, who Plaintiff describes as a "disgusting dirty cop."[55]  Weber spoke with Plaintiff and interviewed Plaintiff several times, and spoke with Dr. Sharp.[56]  Plaintiff was notified that Poulicek would not be prosecuted due to lack of evidence in September 2017.[57]

Plaintiff contends that Weber's investigation was deficient and he improperly closed her case as a part of the Conspiracy to cover-up Poulicek's crimes.[58]  Plaintiff contacted Shona Stokes, an officer in the domestic violence unit, who interviewed Plaintiff and who apparently convinced Weber to obtain additional evidence from Plaintiff relevant to a potential prosecution of Poulicek. Weber reviewed copies of audio-recordings Plaintiff made of visits with the Ear Doctor Defendants, but the recordings failed to give probable cause, so Weber spoke with Dr. Hetzler.[59] Plaintiff alleges that Weber and his supervisor, Lieutenant Stephen Murphy, "masterfully and subtly used different manipulation techniques" on Plaintiff, did not believe Plaintiff was injured,

---

[53] R. Doc. 11, ¶¶ 20 (stating that Plaintiff visited Sharp "shortly after" Poulicek fractured her ears), 29, 94.  Hetzler was deposed in 2019 regarding her treatment of Plaintiff.  *Id.* at ¶¶ 29, 94, 217.
[54] R.Doc. 11, ¶¶ 37, 216
[55] *See, e.g.*, R. Doc. 11, ¶ 104
[56] R. Doc. 11, ¶¶ 47-58, 68.
[57] R. Doc. 11, ¶ 58.
[58] R. Doc. 11, ¶¶ 45-51, 54-58, 84. Plaintiff also spoke with Weber's supervisors, Sergeant Charles Dotson ("a misogynistic pompous jerk") and Lieutenant Steven Murphy of the violent crimes unit.  *Id.* at ¶¶ 59-64.  Murphy also spoke with Plaintiff about her claims.  *Id.* at ¶¶ 65-70.  However, according to Plaintiff, both Dotson and Murphy covered-up Poulicek's crimes and were engaged in the Conspiracy.
[59] R. Doc. 11, ¶¶ 84, 86-90, 92-93.  Plaintiff alleges that Robert Hunt copied the recordings from Plaintiff's laptop, but was inept.  R. Doc. 11, ¶ 90. Hunt stated in the supplemental report that the recordings were not genuine.  *Id.*  at ¶ 91.

and failed to understand how the recordings were evidence. They also abused Plaintiff by stating that she was "not" a victim and implied that she was "crazy."[60]  Furthermore, despite that Weber spoke with Hetzler, Weber falsified Hetzler's diagnosis in his report, which reflected that Hetzler stated that Plaintiff's injuries could not have happened in the manner Plaintiff claimed.[61]

Plaintiff unsuccessfully sought to obtain a copy of Weber's investigation report on several occasions and was thwarted in those attempts by the EBRPD Defendants and the EBRPD Legal Advisers, all of whom were engaged in the Conspiracy.[62]  However, Plaintiff ultimately received a copy of the report from the Domestic Violence Defendants in August 2018, which she confirmed at the *Spears* hearing.  Plaintiff claims it was at this point she learned of the extent of the cover-up by Weber and the EBRPD Defendants and the statements of the Ear Doctor Defendants.[63]

Having received no help from the EBRPD Defendants, Plaintiff then contacted the DOJ Defendants and the D.A. Defendants (several times), John Windham in charge of EBRPD criminal investigations and Murphy Paul, Jr., Chief of EBRPD, in June 2018, but they took no action in response to Plaintiff's allegations about Poulicek and instead covered-up the claims through the Conspiracy.[64]  Plaintiff also contacted private attorneys, Caitlin Chugg and James Knipe, in January 2018 to assist her in getting Poulicek prosecuted. However, they engaged in misrepresentations, including "closing" her public records request for a copy of Weber's report (to which closure Plaintiff initially agreed), committed crimes against Plaintiff, and covered-up the crimes against Plaintiff as part of the Conspiracy.[65]

Having received no assistance from any of the various state agencies or attorneys contacted, Plaintiff sought help with the Capital Area Defendants to obtain a protective order

---

[60] R. Doc. 11, ¶¶ 89-90.
[61] R.Doc. 11, ¶¶ 94.
[62] R. Doc. 11, ¶¶ 68-74.
[63] R. Doc. 11, ¶¶ 73, 108-109.
[64] R. Doc. 11, ¶¶ 11, 13-14, 74, 85, 96-98.
[65] R. Doc. 11, ¶¶ 75-83

against Poulicek.  However, Ebony Cavalier of that office declined to represent Plaintiff (although another representative there provided Plaintiff with a copy of the much sought-after Weber report), and instead engaged in the Conspiracy, including talking to Poulicek's attorneys, Todd Tyson and Brendan Craig, who were also engaged in the Conspiracy.[66]  Plaintiff initiated her own proceedings to obtain a protective order against Poulicek in the Nineteenth Judicial District Court before Judge Woodruff-White and was given a domestic violence/protective order hearing on August 8, 2018 that was rescheduled for August 22, 2018.   Weber and Hunt appeared as witnesses (on order of the Judge) and testified.[67]  However, Judge Woodruff-White also engaged in the Conspiracy, as she conducted the hearing "as a show that some deranged abusive freak was putting on for the audience," including asking Plaintiff uncomfortable and embarrassing questions such as how Plaintiff's ear injuries were inflicted.  Plaintiff's request to appeal *in forma pauperis* was denied and she was cast with approximately $3,000 in costs and fees at the conclusion of the hearing.[68] During the pendency of the proceedings, Plaintiff contacted local news reporter Christopher Nakamoto to independently investigate her claims against Poulicek and the Conspiracy, but Nakamoto stopped responding to Plaintiff and thus also engaged in the Conspiracy.[69]

After the August 2018 protective order hearing, Plaintiff believed that cybercrimes were being committed against her, including her computers and email being hacked and her online postings being deleted, *etc.*, so, "on a whim," she filed a report of cybercrime with the Federal Bureau of Investigations.  To Plaintiff's surprise, the FBI responded through Agent Katie Craft, who spoke to Plaintiff, met with Plaintiff, and obtained a copy of the Weber report.  However,

---

[66] R .Doc. 11, ¶¶ 100-103, 109, 111, 121, 126, 140, 141.
[67] R. Doc. 11, ¶¶ 103-113, 118-143.  Plaintiff contends that she subpoenaed several people, none of whom appeared, and Woodruff-White improperly denied her request for a continuance.  However, according to Plaintiff, the judge ordered Weber to appear and he testified.  *Id.*  Cavalier was also present and was ordered by the judge to provide assistance to Plaintiff, which Plaintiff declined.  *Id.* at ¶ 127.
[68] R. Doc. 1, ¶¶ 126, 141, 143, 147.  Plaintiff was reprimanded by the bailiff for not respecting authority and for being an uncooperative witness.  *Id.* at ¶ 128.
[69] R. Doc. 11, ¶¶ 114-116.

Craft did not help Plaintiff and instead engaged in the Conspiracy.[70]   In late August 2018, Plaintiff contacted Defendant attorney Brad Cranmer to assist with the prosecution of Poulicek, but he declined representation after talking to Chugg.  Cranmer also engaged in the Conspiracy when he represented Plaintiff's landlord in eviction proceedings that occurred "a couple of months" after Plaintiff first met him.[71]

In November 2018, Plaintiff again contacted the D.A. Defendants regarding prosecution of Poulicek.  Plaintiff spoke with A.D.A. Melanie Fields, but Fields refused to assist Plaintiff. Fields told Plaintiff that the EBRPD Defendants did a good job and refused to prosecute Poulicek on the basis of the report.  Plaintiff  threatened to expose the D.A. Defendants and the Conspiracy via an email to Fields on December 4, 2018.[72]   The day after making this threat, a number of adverse things happened to Plaintiff as part of the Conspiracy, including continued cybercrimes by the various law enforcement Defendants wherein Plaintiff's blog posts were deleted and her passwords were changed.[73]   After experiencing increasing cybercrimes, which Plaintiff believes were designed to prevent her from working as a part of the Conspiracy, Plaintiff filed suit in this Court alleging many of the same claims against many of the same Defendants; however, Plaintiff sought voluntarily dismissal of that case without prejudice on March 13, 2019, because, according to Plaintiff, her complaint was handwritten and contained many errors.  The suit was initially dismissed with prejudice on March 19, 2019, but the order of dismissal was amended to be without prejudice, as Plaintiff requested, on November 19, 2019.[74]

Plaintiff's December 2018 threat to the D.A. Defendants to expose the Conspiracy resulted in a physical battery on Plaintiff orchestrated by unidentified Defendants when Plaintiff visited Dr.

---

[70] R. Doc. 11, ¶¶ 32, 150-154.
[71] R. Doc. 11, ¶¶ 18, 154-155, 205-209.
[72] R.Doc. 11, ¶¶ 160-162.
[73] R. Doc. 11, ¶¶ 163-164.
[74] R. Doc. 11, ¶¶ 192-194 *and see* No. 19-48 (M.D. La.).

Shalimar Small on December 11, 2018 for drainage of two "chalazions."  Plaintiff claims that Small injected a "caustic, corrosive substance" into Plaintiff's right eyelid, which caused it to be permanently deformed, burned, raw, and swollen as part of the Conspiracy.[75]  Plaintiff returned to Small's office in December 2018 and was seen by Dr. Ashton Holloway, the owner of the clinic, who would not examine Plaintiff and escorted her out of the clinic.[76]  Plaintiff then sought treatment for her eye from Dr. Daniel Nelson, who refused to diagnose Plaintiff and wrote in Plaintiff's records that Plaintiff had a "red eye."  Nelson referred Plaintiff to another provider, but the appointments Plaintiff made with Nelson's referral were cancelled as part of the Conspiracy.[77]  Plaintiff then sought treatment from Dr. Blake Booth, who performed procedures on Plaintiff's eyes to remove "granulomas" and scar tissue but who engaged in the Conspiracy as well by refusing to send Plaintiff's removed eye specimens to a lab for study and by further disfiguring Plaintiff's eyelid.[78]  Plaintiff filed suit in approximately late 2019 against all of the Eye Doctor Defendants for battery in the Nineteenth Judicial District Court before Judge William Morvant.  Dissatisfied that her pleadings were not visible on the public docket and no action was taken for six weeks, Plaintiff petitioned the Louisiana Supreme Court, claiming that she was being denied access to the courts.  As part of the Conspiracy, Judge Morvant denied Plaintiff's motions for preliminary default and ultimately dismissed the suit sometime in 2020 as prematurely-filed medical malpractice claims.[79]

Also in the time period immediately following Plaintiff's threat to the D.A. Defendants to expose the Conspiracy, *i.e.* December 2018, Plaintiff realized that two of her three male roommates

---

[75] R. Doc. 11, ¶¶ 166-174, 185-188, 216.

[76] R. Doc. 11, ¶¶ 176-177.

[77] R. Doc. 11, ¶ 179.

[78] R. Doc. 11, ¶ 180-183.  Plaintiff contends that Dr. Booth falsified her medical records, which he initially refused to provide to her.  Thereafter, Plaintiff attempted to see Dr. Blake Williamson, who declined to see her but provided a referral.  Plaintiff attempted to obtain further referrals from Dr. Nelson.  *Id.* at ¶¶ 183-184.

[79] R. Doc. 11, ¶¶ 189-191. The Complaint references that the defendants were served in January 2020, after the Supreme Court filings, and they appeared in May 2020.

(along with the law enforcement Defendants) had committed cybercrimes against her as part of the Conspiracy. This is because Plaintiff's router was repeatedly disconnected, her network access was denied, and her accounts were accessed. Plaintiff ceased living at her apartment in January and February 2019 because of these crimes and was ultimately involved with eviction proceedings. During one of the proceedings, the apartment owner was represented by Cranmer, the attorney from whom Plaintiff had previously requested representation. The eviction proceedings, and Cranmer's representation of the landlord, were part of the Conspiracy and designed to terrorize Plaintiff.[80]

Finally, Plaintiff's laptop purchased online from Amazon, which she received in April 2020, arrived in an unsealed box and was thus subject to tampering. When Plaintiff attempted to purchase another one from Costco a few days later, the store employees attempted to tamper with the display model she was going to buy because they asked that she wait for twenty minutes so that they could re-boot it for her. Plaintiff asserts "unknown judges" signed warrants that allowed the law enforcement Defendants "to intercept Plaintiff's packages with electronic devices in order to unlawfully tamper with them and do the same at Costco" as part of the Conspiracy.[81]

## C. Plaintiff's Conspiracy Claims Are Unsubstantiated and Frivolous and Should Be Dismissed.

To the extent Plaintiff intends to argue that her conspiracy claims are not prescribed because the conspiracy was a continuing tort that lasted into 2020, these assertions of a vast multi-year conspiracy among state and municipal offices and their representatives, as well as judges, attorneys, and physicians, are unrealistic and implausible. Plaintiff does not allege any facts to show that the alleged main perpetrator of the conspiracy, Weber, had a motive to engage in a cover-up of the actions of Poulicek, or in fact, that Weber even knew Poulicek. Nor does Plaintiff explain

---

[80] R. Doc. 11, ¶¶ 197, 200-209, 210 (alleging that Plaintiff's two roommates were involved in the Conspiracy).
[81] R. Doc. 11, ¶ 39, 212.

why forty-four named Defendants (and, it seems to her, all the judges of this Court) would be motivated to participate in such a conspiracy against her. Nor does Plaintiff explain the object of such a conspiracy or articulate any meeting of the minds as to the purpose.[82]   According to her own facts, Plaintiff's allegations were given consideration on several different levels, as the EPRBPD Defendants and FBI, *e.g.*, Weber, Stokes, Murphy, Hunt, and Craft, responded to Plaintiff's complaints, listened to her audio recordings, and investigated her claims, and A.D.A. Fields spoke with Plaintiff and reviewed Weber's report, although they all apparently determined that Plaintiff's claims were unworthy of prosecution. The Capital Area Defendants met with Plaintiff and declined to represent her.  Judge Woodruff-White held a hearing at which witnesses testified but declined to issue a protective order.  Judge Morvant ultimately dismissed certain of Plaintiff's claims as premature claims related to medical malpractice.  Substantial public resources have been expended in response to Plaintiff's claims, and each decisionmaker involved has independently determined that Plaintiff's claims are not actionable. Similarly, after a thorough review of Plaintiff's lengthy Complaint, as amended, and her testimony at the *Spears* hearing, Plaintiff's subjective allegations of a vast conspiracy are devoid of merit, unsubstantiated, fantastical and subject to dismissal as frivolous.[83]

---

[82] To prevail on a claim of civil conspiracy, a plaintiff must establish: 1) a combination of two or more persons; 2) an object to be accomplished, *i.e.*, an unlawful purpose or a lawful purpose by unlawful means; 3) a meeting of the minds on the object or course of action; 4) on or more unlawful, overt acts, and 5) damages as the proximate result.  *Duke Energy International, L.L.C. v. Napoli*, No. 09-2408, 748 F.Supp.2d 656, 674-75 (S.D. Tex. Sept. 21, 2010).

[83] *See Atakapa Indian de Creole Nation v. Louisiana,* 943 F.3d 1004, 1006 (5th Cir. 2019) ("Some claims are 'so insubstantial, implausible, ... or otherwise completely devoid of merit as not to involve a federal controversy.' *See Oneida Indian Nation of N.Y. v. Oneida Cty.*, 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). Federal courts lack power to entertain these 'wholly insubstantial and frivolous' claims. *Southpark Square*, 565 F.2d at 343–44. Determining whether a claim is 'wholly insubstantial and frivolous' requires asking whether it is 'obviously without merit' or whether the claim's 'unsoundness so clearly results from the previous decisions of (the Supreme Court) as to foreclose the subject.' *Id.* at 342.  Unsurprisingly, we can find no Supreme Court precedent controlling or even addressing the plaintiff's exotic claims. We must therefore ask: are the claims 'obviously without merit'? We say yes. The pleadings speak for themselves.").

**D. Plaintiff Has No Private Right of Action to Assert Criminal Allegations**

In addition to her conspiracy allegations, Plaintiff also alleges the commission of aggravated battery against her; violations of the Louisiana Public Records Act ("PRA"), La. R.S. 44:1, *et seq.*; and the commission of various state law torts against Plaintiff and her dog, *e.g.*, intentional infliction of emotional distress, fraud, and defamation.[84]

Plaintiff alleges that a large part of the Conspiracy was devoted to the commission of crimes and cybercrimes against her, including by the law enforcement Defendants, the DOJ Defendants, the D.A. Defendants, and Plaintiff's roommates (who are not parties). Plaintiff claims she is the victim of aggravated battery by the Eye Doctor Defendants, the EBRPD Defendants, the D.A. Defendants and the DOJ Defendants.[85] Plaintiff also claims that the law enforcement Defendants, and Weber specifically, attorney Chugg, and Judges Woodruff-White and Morvant engaged in the crimes of falsifying and filing public records pursuant to La. R.S. 14:132 and La. R.S. 14:133, which also qualifies as a "racketeering activity" for the purposes of La. R.S. 15:1352.[86] Relatedly, Plaintiff also alleges that the law enforcement Defendants and Chugg prevented Plaintiff from obtaining Weber's report in violation of La. R.S. 44:37, which provides for criminal penalties for custodians of public records who violate the PRA.[87]

A plaintiff does not generally have a private cause of action under a federal criminal statute.[88] To the extent Plaintiff alleges state law claims, this Court may decline to exercise

---

[84] R. Doc. 11, ¶¶ 225-238.

[85] R. Doc. 11, ¶ 225 through ¶¶ 230, 233, 238  (generally alleging crimes and cybercrimes, and the conspiracy to commit and cover-up same, by Defendants).

[86] R. Doc. 11, ¶¶ 238.

[87] Plaintiff admitted in the Amended Complaint and during the hearing that she ultimately obtained a copy of Weber's report in August 2018. R. Doc. 11, ¶ 109. Plaintiff also admitted that she consented to the withdrawal of her first PRA request by Chugg. R. Doc. 11, ¶¶ 81-82.  Although Plaintiff claims that she subsequently "resubmitted" the PRA request for Weber's report, Plaintiff provided no details regarding her request, including to whom it was sent, other than to allege it was sent to the "BRPD '"legal division.'" *Id.* at ¶ 95.  It is thus unclear if Plaintiff submitted a proper PRA request.

[88] *Gill v. State of Texas*, 153 F.Appx. 261, 262-63 (5th Cir. 2005)("[D]ecisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion and, as a private citizen, Gill has no standing to institute a

18

supplemental jurisdiction over such claims if, for example, those claims predominate over federal claims or if the court has dismissed all claims over which it has original jurisdiction. If this Report and Recommendation is adopted, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  To the extent Plaintiff attempts to raise any claims under federal law arising out of these facts, those claims should be dismissed.

### E.    The Majority of Plaintiff's Substantive Claims Are Untimely and Should Be Dismissed

In addition to the foregoing, Plaintiff's Section 1983/federal and state tort claims, all of which occurred in Louisiana, are barred by the statute of limitations, which may be raised *sua sponte* in this 28 U.S.C. §1915 proceeding.[89] The statute of limitations for Section 1983 claims is "the forum state's personal-injury limitations period," which in Louisiana, is one year.[90]  "In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions."[91]   However, federal law governs when a Section 1983 claim accrues.[92] This court has stated that "[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."[93] As a result, the limitations period begins "when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury.'"[94]  Thus, the applicable statute of limitations as to all of Plaintiff's claims, both federal and state, is one year, unless otherwise suspended or interrupted.

---

federal criminal prosecution and no power to enforce a criminal statute …. Therefore, the district court did not abuse its discretion when it dismissed these claims as legally frivolous.") (citations omitted).

[89] *See Washington v. Friels,* No. 15-2400, 2016 WL 1306004, at *3 (W.D. La. Mar. 31, 2016) ("Although the defense of limitations is an affirmative defense, which usually must be raised by the defendants in the district court, this court has held that the district court may raise the defense sua sponte in an action proceeding under 28 U.S.C. § 1915. Thus, where it is clear from the face of a complaint that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed pursuant to § 1915(d).").

[90] *Smith v. Regional Transit Authority,* 827 F.3d 412, 421 (5th Cir. 2016), *citing Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)

[91] *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993).

[92] *Jacobsen*, 133 F.3d at 319.

[93] *Gartrell*, 981 F.2d at 257.

[94] *Id*. (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)).

The facts alleged by Plaintiff, as reproduced in detail above, reflect that Plaintiff was aware of her tort claims against Poulicek and the Ear Doctor Defendants in 2017 and 2018, which are prescribed. Plaintiff stated at the *Spears* hearing that her receipt of the Weber report in August 2018, and her attempts to obtain assistance in response to the report, put her on notice prior to August 2019 of her claims against the majority of the other Defendants, including the EBRPD Defendants, the EBRPD Legal Advisor Defendants, the D.A. Defendants, the DOJ Defendants,[95] FBI Agent Craft, Nakamoto, the Domestic Violence Defendants, Judge Woodruff-White, the various attorneys she contacted for representation and the attorneys that represented Poulicek during the protective order proceedings. Likewise, Plaintiff's claims against the Eye Doctor Defendants are based on treatment provided to Plaintiff that occurred in December 2018 and shortly thereafter in 2019 and are prescribed. Notably, these same claims have already been dismissed by Judge Morvant as prematurely-filed, and they may currently be the subject of pending medical malpractice proceedings, which is unknown.

Plaintiff was specifically questioned about the timeliness of her claims during the *Spears* hearing, and she confirmed that she received Weber's report in 2018 and the protective order proceedings were in 2018. Plaintiff stated at the *Spears* hearing that she believed that the appliable statute of limitations for her claims was two years; however, Plaintiff's mistaken belief does not toll the running of the statute of limitations.

While Plaintiff filed suit in January 2019 alleging many of these same claims against the many of the same Defendants, Plaintiff confirmed during the *Spears* hearing that she voluntarily dismissed that suit without prejudice, which did not interrupt prescription.[96] Accordingly, it is

---

[95] Plaintiff's claims against the Louisiana Department of Justice, an arm of the State, may also be barred by sovereign immunity. *See, e.g., Montgomery-Smith v. Louisiana Department of Health and Hospitals*, 17-5564, 299 F.Supp.3d 790, 807 (E.D. La. March 2, 2018) ("For the purpose of sovereign immunity, DHH, a Louisiana state agency, is considered an 'arm of the state' and, therefore, protected by the Eleventh Amendment.")(citation omitted).

[96] *See Lawrence v. Center Properties, LLC,* No. 20-247, 2020 WL 4784985, at *4 (E.D. La. Aug. 17, 2020) ("[E]ven though Plaintiff had previously filed a state court suit based on the same factual allegations, the Court finds that

recommended that all of Plaintiff's claims arising from events before August 2019 should be dismissed as legally frivolous because they are untimely.

### F.    Plaintiff's Remaining Claims, to the Extent Cognizable, Are Barred by Absolute Judicial Immunity

Plaintiff only alleges a few incidents that occurred after August 6, 2019—the latest date that events from which Plaintiff's claims arise could be timely based on the applicable one-year prescriptive period:

- March 16, 2020 - Louisiana First Circuit Court of Appeal overturned Judge Woodruff-White's denial of Plaintiff's IFP application in the 19th JDC protective order proceeding

- April 2020 - Judge Woodruff-White wrote minutes related to the costs/fees outstanding

- April 2020 - Plaintiff's laptop delivered from Amazon and the laptop she attempted to purchase from Costco were purportedly tampered with based on warrants issued by unidentified judges

- July 2020 – Judge Morvant dismissed Plaintiff's battery case against the Eye Doctor Defendants

To the extent these incidents form part of the Conspiracy, dismissal has already been recommended.  To the extent these are independent claims, Judge Morvant and Judge Woodruff-White are entitled to absolute judicial immunity for their decisions.

Plaintiff claims that in March 16, 2020, the Louisiana First Circuit Court of Appeal overturned Judge Woodruff-White's denial of Plaintiff's request to proceed *in forma pauperis* in the protective order proceedings, which granted the relief sought by Plaintiff.[97]   In April 2020, Judge Woodruff-White issued written minutes related to the amount of costs and fees owed by

---

prescription was not interrupted by that lawsuit. Even assuming that the state court suit, which initially only included state law claims, would have interrupted prescription, Plaintiff acknowledges she voluntarily dismissed that suit. Under Louisiana law, a plaintiff who voluntarily dismisses a suit loses the advantage of the interruption of prescription, as the interruption is considered never to have occurred. (*citing* La. Civ. Code. art. 3463 ("Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time either before the defendant has made any appearance of record or thereafter, or fails to prosecute the suit at the trial.") and *Orleans Parish School Bd. v. U.S. Gypsum Co.*, 892 F. Supp. 794, 803 (E.D. La. June 5, 1995)).

[97] R. Doc. 11, ¶ 146.

Plaintiff in the protective order proceedings;[98] however, this allegation does not assert any actionable claim by Plaintiff. Even if it did, Judge Woodruff-White is entitled to judicial immunity in issuing court minutes as she took that action while in her judicial capacity.[99] Likewise, Judge Morvant's rulings, which denied default judgments against the Eye Doctor Defendants in July 2020 and dismissed Plaintiff's battery claims against those Defendants at some point in 2020 as premature,[100] are barred by absolute judicial immunity.

Finally, Plaintiff alleges that unidentified judges issued warrants permitting the tampering of a laptop Plaintiff purchased from Amazon that was delivered with the box unsealed in April 2020, as well as the tampering of a model display laptop that Plaintiff attempted to purchase from Costco.[101] These allegations are wholly speculative and are entirely devoid of any details, including the names of the alleged judges who issued the alleged warrants, but would be barred by judicial immunity as well.

For all these reasons, it is recommended that Plaintiff's remaining claims be dismissed with prejudice and without leave to amend, as Plaintiff has already had an opportunity to plead her "best case." Plaintiff has already filed two lengthy Complaints, and thus has had an opportunity to allege facts showing a claim for relief but has failed to do so despite almost two hundred pages.

---

[98] R. Doc. 11, ¶ 147.

[99] *See Martin v. Dufresne,* No. 14-1339, 2014 WL 3867267, at *5 (E.D. La. Aug. 5, 2014) ("The United States Supreme Court has explained: "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco,* 502 U.S. 9, 11 (1991). Further, judicial immunity is clearly applicable in cases, such as the instant one, brought pursuant to 42 U.S.C. § 1983. *Stump v. Steward,* 435 U.S. 349, 356 (1978); *Pierson v. Ray,* 386 U.S. 547, 554–55 (1967)." *See also Morrison v. Walker,* 704 F. App'x 369, 372–73 (5th Cir. 2017) ("A judge's actions are protected by absolute judicial immunity, which is overcome in only two scenarios: (a) where the actions are "not taken in the judge's judicial capacity" or (b) where they are "taken in the complete absence of all jurisdiction." *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam).") Plaintiff's allegations against the judges in this case arise out of actions they took in their judicial capacities and are thus barred, as neither of the exceptions to immunity applies.

[100] R. Doc. 11, ¶¶ 189-191.

[101] R. Doc. 11, ¶¶ 39, 212. Plaintiff's Amended Complaint implies that the Costco employees asked Plaintiff to wait twenty minutes for the display laptop so that it could be tampered with prior to the sale to Plaintiff pursuant to the alleged warrants.

Additionally, during the *Spears* hearing, Plaintiff was given the opportunity to further explain her claims, but she was unable to establish that she has any nonfrivolous claims. Leave to amend should also be denied because, as explained above, many of Plaintiff's claims are barred by the statute of limitations and/or absolute immunity, and further amendments would be futile.[102]

### G. Plaintiff's Motion to Withdraw Her Motion to Proceed *In Forma Pauperis* and Motion to Accept Filing Fee Are Denied Without Prejudice Because They Are An Attempt to Avoid Screening

Plaintiff's Motion to Withdraw Her Motion to Proceed *In Forma Pauperis* ("Motion to Withdraw IFP") and related Motion to Accept and Properly Process Filing Fee ("Motion to Accept Filing fee")[103] were referred to the undersigned for decision.

Plaintiff's filed her Motion to Proceed *In Forma Pauperis* based upon allegations of poverty.[104] After questioning during the *Spears* hearing, and an explanation that Plaintiff's claims were likely time-barred and/or barred by judicial immunity, Plaintiff inquired if her case would still be subjected to a *Spears* hearing if she had paid the filing fee and was not proceeding IFP. Plaintiff's questions strongly suggest that Plaintiff was looking for a way to circumvent the §1915 screening process, just as she had attempted to do by seeking a writ of mandamus to avoid the

---

[102] *See King/Morocco v. Land Rover Sw. Houston,* No. 18-4196, 2018 WL 5995295, at *3 (S.D. Tex. Nov. 15, 2018), *appeal dismissed,* No. 19-20417, 2019 WL 6878533 (5th Cir. July 10, 2019) ("The court denies Simms leave to amend the complaint given that Simms's employment-discrimination claims are time-barred and duplicative, and his international-law claims are meritless and duplicative. Granting leave to amend would be futile. *See Brewster v. Dretke,* 587 F.3d 764, 768 (5th Cir. 2009)" *and Gutierrez v. Drug Enf't Admin.,* No. 18- 964, 2018 WL 4471789, at *2 (N.D. Tex. Aug. 24, 2018), *report and recommendation adopted,* No. 18-CV-964, 2018 WL 4467924 (N.D. Tex. Sept. 17, 2018) *citing Brewster v. Dretke,* 587 F.3d 764, 767-768 (5th Cir. 2009) (while generally "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed, ... [g]ranting leave to amend is not required ... if the plaintiff has already pleaded his 'best case.' ").

[103] R. Doc. 21. In the Motion to Accept Filing Fee, Plaintiff states that she tendered a check to the Clerk of Court for the filing fee via Fed Ex on December 7, 2020, which the Court received on December 8, 2020, the day she filed the Motion to Withdraw IFP. Plaintiff complains that the original check and a second check she has since tendered have been returned to her by the Clerk's Office and she has allegedly been given contradictory information regarding the applicable amount of the filing fee. Plaintiff requests an order with the correct amount of the filing fee and instruction to the Clerk's office to process Plaintiff's check in that amount upon receipt.

[104] R. Doc. 5.

*Spears* hearing. The Motion to Withdraw IFP and related Motion to Accept Filing Fee appear to be Plaintiff's post-hearing attempt to avoid the § 1915 screening of this case.

The Motion to Withdraw IFP and Motion to Accept Filing Fee will be denied. First, 28 U.S.C. § 1915(e)(2) provides, in relevant part, that "[n]otwithstanding any filing fee, or portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that" the action or appeal "is frivolous or malicious," or "fails to state a claim on which relief may be granted." Under the plain language of the statute, Plaintiff's claims in this case are subject to dismissal as frivolous notwithstanding payment of the filing fee because she originally sought, and was granted, permission to proceed IFP.[105]

Additionally, the policy behind the screening process requires denial of Plaintiff's attempts to circumvent screening. The critical purpose of the § 1915 screening process was explained by one court, as follows:

> The elimination of the gross waste of time required to separate the "wheat from the unusual amount of chaff necessarily presented in a system which fosters pro se litigation" … is one of the most difficult challenges presently confronting the federal judiciary. Because Section 1915 is the ticket for free entrance into the federal system and is a privilege and not a right … this District, like many others, has focused on the discretionary controls contained in 28 U.S.C. § 1915(d) [now § 1915(e)], which enable a court to dismiss the action sua sponte "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."[106]

It is, thus, the responsibility of the courts to ensure that the *in forma pauperis* statute is used in good faith. Plaintiff should not be permitted to avoid the §1915 screening process (and a recommendation of dismissal) by withdrawing that status and/or tendering the filing fee at this time, considering the large amount of judicial resources that have been spent reviewing and

---

[105]In fairness to Plaintiff, however, she will not be permitted to pay the filing fee, which she has stated under oath in the application (R. Doc. 2), and on the record at the *Spears* hearing, that she cannot afford, since dismissal of the suit is recommended and payment of the fee would not help Plaintiff avoid dismissal.

[106] *Carter v. Telectron, Inc.*, 452 F.Supp. 944, 950 (S.D. Tex. Dec. 16, 1977) (citations omitted).

evaluating two hundred pages of complaints and preparing for and conducting a *Spears* hearing, as well as drafting this Report and Recommendation.  To permit Plaintiff to simply withdraw her IFP status post-hearing, now that she has been alerted to the incurable defects in her Complaint, would set a dangerous precedent and would detract from the important purpose of §1915 screening.

If this Report and Recommendation is not adopted and Plaintiff's claims are permitted to proceed, then Plaintiff may re-urge her Motion to Withdraw IFP and Motion to Accept Filing Fee; however, Plaintiff is advised that she will be required to provide additional information in support of any such request to determine the truthfulness of the allegations of poverty in her IFP application.  Plaintiff apparently can pay the filing fee now in an attempt to avoid frivolous dismissal of her claims, but she has not explained any changes in her financial condition. Plaintiff will be subject to sanctions if she is found to have been untruthful in the initial application.[107]

## III.  Conclusion, Order and Recommendations

Accordingly, Plaintiff's Motion to Change Venue Due to Prejudice, Motion for 28 U.S. Code § 144 Disqualification of the entire U.S. Court for the Middle District of Louisiana, and Motion to Disqualify Judge Pursuant to 28 U.S. Code § 455 will be denied as she has failed to

---

[107] *See* Fed. R. Civ. P. 11(b) and (c) "By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…(c)(1) If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation…." *See also Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986) (affirming Fed. R. Civ. P. 11 monetary sanctions and imposing an injunction against *pro se* plaintiff from filing further frivolous lawsuits). *See Nottingham v. Warden, Bill Clements Unit,* 837 F.3d 438, 441 (5th Cir. 2016) ("The statute governing IFP status specifies that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if [it] determines that ... the allegation of poverty is untrue." Accordingly, inquiry into whether Nottingham's allegations of poverty were true was well within the district court's discretion. Dismissal is mandatory if the court determines 'at any time,' even after the plaintiff pays the filing fee, that the contents of an IFP application are false. A district court retains the authority to conduct reasonable investigations into the allegation of poverty even after the filing fee payment. Under the statute's plain language, Nottingham's eventual payment did not disrupt the district court's ability to inquire into whether the initial IFP application contained misrepresentations.").

establish entitlement to such relief.[108] It is recommended that all federal claims be dismissed with prejudice as the claims are either factually and/or legally frivolous and that Plaintiff be denied leave to amend as she has already filed one amended complaint and future attempts would not cure the defects. Supplemental jurisdiction over state law claims should be declined. Plaintiff's Motion to Withdraw her previously granted Motion to Proceed In Forma Pauperis[109] and her Motion To Accept And Properly Process Filing Fee[110] will be denied without prejudice to re-urging if the district judge rejects the recommendation that Plaintiff's claims be dismissed.

**IT IS ORDERED** that Plaintiff's Motion to Change Venue Due to Prejudice; Motion for 28 U.S. Code § 144 Disqualification of the entire US Court for the Middle District of Louisiana; and Motion to Disqualify Judge Pursuant to 28 U.S. Code § 455 are **DENIED**.[111]

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Withdraw Her Motion to Proceed *In Forma Pauperis*[112] and Motion to Accept and Properly Process Filing Fee[113] are **DENIED WITHOUT PREJUDICE** to re-urging if her claims are permitted to proceed.   For any re-urged motion(s), Plaintiff will be required to provide additional information to determine the truthfulness of the information in Plaintiff's IFP application.

**IT IS RECOMMENDED** *sua sponte* following a *Spears* hearing that all federal claims in Plaintiff's Amended Complaint[114] be **DISMISSED WITH PREJUDICE** because the claims are based on implausible factual allegations and/or are legally frivolous. Leave to amend is not warranted because Plaintiff has already had an opportunity amend and further amendments would be futile.

---

[108] R. Docs. 16-18.
[109] R. Doc. 20 *and see* R. Doc. 5.
[110] R. Doc. 21.
[111] R. Docs. 16-18.
[112] R. Doc. 20.
[113] R. Doc. 21.
[114] R. Doc. 11.

If the recommendation to dismiss all federal claims is adopted, **IT IS FURTHER RECOMMENDED** that all state law claims be **DISMISSED WITHOUT PREJUDICE**.

Signed in Baton Rouge, Louisiana, on January 5, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**